[Cite as *State v. Rohrig*, 2023-Ohio-3176.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| State of Ohio, | : | No. 22AP-735 |
| Plaintiff-Appellee, | : | (M.C. No. 2022 CRB 010694) |
| | : | No. 22AP-736 |
| v. | | (M.C. No. 2021 CRB 3653) |
| | : | |
| Kyle Rohrig, | | No. 22AP-742 |
| | : | (M.C. No. 2019 CRB 016888) |
| Defendant-Appellant. | : | |
| | : | (ACCELERATED CALENDAR) |
| | : | |

D E C I S I O N

Rendered on September 7, 2023

**On brief:** *Metz, Bailey & McLoughlin, LLP*, and *Lauren R. Swihart* for appellee.

**On brief:** *Kyle Rohrig*, pro se. **Argued:** *Kyle Rohrig*.

APPEALS from the Franklin County Municipal Court

PER CURIAM

{¶ 1}   Defendant-appellant, Kyle Rohrig, appeals judgments of the Franklin County Municipal Court dismissing the charges against him and discharging him after finding that he is incompetent to stand trial.  For the following reasons, we affirm those judgments.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   This appeal involves three different cases: (1) *City of Westerville v. Rohrig*, municipal case No. 2019 CRB 16888, (2) *City of Columbus v. Rohrig*, municipal case No. 2021 CRB 3653, and (3) *City of Hilliard v. Rohrig*, municipal case No. 2022 CRB 10694. In the first case (2019 CRB 16888), Mr. Rohrig was charged under R.C. 2919.27 with one first-degree misdemeanor count of violating a protection order issued under R.C. 2919.26.

A jury found Mr. Rohrig guilty. On December 10, 2020, the trial court sentenced Mr. Rohrig to 180 days incarceration, with 150 days suspended and 28 days jail-time credit, as well as two years community control. Mr. Rohrig appealed the judgment of conviction and sentence to this court, and we affirmed that judgment. *State v. Rohrig*, 10th Dist. No. 20AP-579, 2021-Ohio-3903.

{¶ 3} In the second case at issue in this appeal (2021 CRB 3653), Mr. Rohrig was charged under R.C. 2919.27(A)(2) with one first-degree misdemeanor count of violating a protection order issued under R.C. 2903.214. The affidavit supporting the complaint stated that, on March 21, 2021, Mr. Rohrig violated a civil protection order issued to M.P. by sending M.P. a Facebook message. That civil protection order prohibited Mr. Rohrig from initiating contact with M.P.

{¶ 4} Mr. Rohrig pleaded not guilty to the charge. Mr. Rohrig filed several pro se motions to dismiss the charge against him throughout the pendency of the case. Those motions focused on an encounter Mr. Rohrig had with S.P., M.P.'s father, who also has a civil protection order against Mr. Rohrig. From what we can determine from Mr. Rohrig's motions, Mr. Rohrig and S.P. ran into each other at a Florida bar, and this encounter led to Mr. Rohrig's arrest for trespassing. S.P. took a photograph of Mr. Rohrig's arrest and shared it on social media. S.P. also allegedly contacted Mr. Rohrig's father and asked him why Mr. Rohrig was in Florida. Mr. Rohrig contended that S.P.'s actions justified his attempt to communicate with M.P. via Facebook.

{¶ 5} Initially, the trial court assigned a public defender to represent Mr. Rohrig. In May 2021, the public defender withdrew from the case, and the trial court appointed private counsel for Mr. Rohrig. Nevertheless, Mr. Rohrig continued to file his own pro se motions, as well as a notice that he was representing himself. By August 2021, the appointed counsel moved to withdraw from the case, stating that Mr. Rohrig was insisting on representing himself and "Mr. Rohrig has continuously berated counsel and staff, and the professional relationship is fractured beyond repair." (Aug. 12, 2021 Mot. to Withdraw as Counsel at 2.) The trial court allowed counsel to withdraw and appointed new counsel for Mr. Rohrig. By February 2022, however, the newly appointed counsel also moved to withdraw because Mr. Rohrig had sought to disqualify him. The trial court granted that motion.

{¶ 6}    Mr. Rohrig, meanwhile, was not only filing motions to disqualify his own counsel; he was also filing motions to disqualify the trial court judge and prosecuting attorney.  The majority of Mr. Rohrig's motions to recuse the trial court judge, Judge Mark Hummer, focused on an incident involving Judge Hummer's wife, Jeanine Hummer, an attorney working for the civil division of the Franklin County Prosecutor's Office.  Apparently, Mr. Rohrig requested via email that the staff attorney for Judge Jaiza Page of the Franklin County Court of Common Pleas testify at Mr. Rohrig's trial in 2021 CRB 3653.  Mr. Rohrig had sued a group called "NYOHS Crew," which supposedly included S.P., in the common pleas court, and that case was assigned to Judge Page.  The staff attorney forwarded Mr. Rohrig's email to Mrs. Hummer because she was legal counsel for the Franklin County Court of Common Pleas.  Mrs. Hummer contacted Mr. Rohrig and allegedly told him she would move to quash any subpoena issued to the staff attorney.  According to Mr. Rohrig, due to this incident, Mrs. Hummer was a material witness to his case and/or had an interest in his case.  Consequently, Mr. Rohrig argued, Judge Hummer had to recuse himself from Mr. Rohrig's case.  Mr. Rohrig attached to his motions photographs taken from social media of Mrs. Hummer with Judge Hummer and of the Hummers with their children.

{¶ 7}    After receiving four motions seeking his recusal, Judge Hummer decided to recuse himself from Mr. Rohrig's case.  Judge Hummer explained:

> Defendant has made multiple references to Judge Hummer's family in various e-mails to the judge's bailiff and in file-stamped pleadings.  He also attached Facebook photos of the judge's family to pleadings in the case file.
>
> * * *
>
> [I]n light of the two new e-mails from defendant received by the bailiff dated Feb. 23, 2022 (12:51 p.m.: "...after all jeanine is your wife meaning instanta [sic] disqualification...") (9:33 a.m.: "Thank you for not dismissing the case and not refusing himself...so I will start the process above them and result in jail time..."), the court believes Rule 1.2 of the Code of Judicial Conduct is applicable.
>
> Rule 1.2 provides as follows:  "A judge shall act at all times in a manner that promotes public confidence in the independence,

integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety."

(Feb. 24, 2022 Entry at 2.)

{¶ 8} Although no attorney had represented Mr. Rohrig since the withdrawal of his second appointed counsel, the new judge assigned to the case—Judge James O'Grady—again appointed counsel for Mr. Rohrig in May 2022. Mr. Rohrig's new counsel was Ryan Shafer. Having new legal representation did not stop Mr. Rohrig from continuing to file pro se motions, including additional motions to dismiss and motions to recuse the judge and prosecutor. On October 6, 2022, Judge O'Grady recused himself from this case because he had recused himself from the third case at issue in this appeal—2022 CRB 10694. Judge James Green then became the trial judge assigned to Mr. Rohrig's second case (2021 CRB 3653).

{¶ 9} The third case at issue in this appeal, 2022 CRB 10694, grew out of the second case. On July 21, 2022, Mr. Rohrig was charged under R.C. 2917.21(A)(5) with one first-degree misdemeanor count of telecommunications harassment. According to the complaint, the former prosecutor in 2021 CRB 3653, Heather Keck, told Mr. Rohrig to stop contacting her. Mr. Rohrig, however, sent six emails after Ms. Keck demanded he stop.

{¶ 10} Mr. Rohrig pleaded not guilty to the charge. At the arraignment, the City of Hilliard requested a psychological evaluation of Mr. Rohrig. In a judgment entered July 25, 2022, the trial court ordered Mr. Rohrig to undergo an evaluation to determine his competency to stand trial.

{¶ 11} Just as he had done in the second case, Mr. Rohrig filed pro se motions to dismiss the charge and to recuse the trial judge in the third case. On August 17, 2022, the trial judge—Judge O'Grady—recused himself from 2022 CRB 10694 to avoid the appearance of impropriety. This recusal also resulted in the judge recusing himself from the second case, as noted above. Judge Green then became the trial judge assigned to both of the later, active cases (2021 CRB 3653 and 2022 CRB 10694).

{¶ 12} The trial court held a hearing regarding Mr. Rohrig's competency to stand trial on September 6, 2022. Based on the examiner's report and the evidence adduced at the hearing, the trial court found that Mr. Rohrig's present mental condition rendered him incapable of understanding the nature and objective of the proceedings or assisting in his

defense.  In an entry issued September 6, 2022, the trial court ordered that Mr. Rohrig undergo outpatient treatment through the Twin Valley Behavioral Healthcare Outpatient Competency Restoration Program for no longer than 60 days.  The trial court also ordered that Twin Valley Behavioral Healthcare file a written report regarding Mr. Rohrig's competency at the conclusion of his treatment.

{¶ 13} On September 30, 2022, Ryan Shafer entered an appearance as counsel for Mr. Rohrig in 2022 CRB 10694.  Mr. Rohrig responded by filing a pro se motion to recuse both the trial judge and Mr. Shafer.

{¶ 14} On November 15, 2022, the trial court held a hearing in 2021 CRB 3653 and 2022 CRB 10694 after receiving the competency restoration report.  At the hearing, Mr. Rohrig proceeded pro se, with Mr. Shafer assisting him in an "advice only" capacity.

{¶ 15} During the hearing, the trial court first addressed the competency restoration report, which had concluded Mr. Rohrig was not able to rationally provide his own defense or accept legal advice.  The prosecutors for the City of Columbus and the City of Hilliard stipulated to the report's findings, and Mr. Rohrig objected to them.  Over Mr. Rohrig's objection, the trial court accepted the findings in the report.  Both prosecutors then argued that the trial court should file an affidavit in probate court for the civil commitment of Mr. Rohrig pursuant to R.C. 5122.111.  The trial court determined it would not file such an affidavit, but instead dismissed the complaints in 2021 CRB 3653 and 2022 CRB 10694, and discharged Mr. Rohrig in those two cases.

{¶ 16} As a final matter, the trial court addressed Mr. Rohrig's conviction in 2019 CRB 16888.  The prosecutor for the City of Hilliard, on behalf of the prosecutor for the City of Westerville who was not present, explained to the trial court that Mr. Rohrig had appealed the judgment of conviction and sentence in 2019 CRB 16888, and this court had affirmed that judgment.  The trial court then confirmed the terms of Mr. Rohrig's earlier sentence in 2019 CRB 16888.

{¶ 17} In judgments issued on November 15, 2022, the trial court found Mr. Rohrig was incompetent to stand trial and there was not a substantial probability that he could be restored to competency within the time allotted by law.  The trial court ordered the complaints against Mr. Rohrig dismissed and discharged Mr. Rohrig.

## II. ASSIGNMENTS OF ERROR

{¶ 18} Mr. Rohrig now appeals the November 15, 2022 judgments, and he assigns the following errors:

[1.] Appellant was prejudiced by his attorney's ineffective assistance when his "attorney" violated attorney-client privilege to help the Judges and Prosecutors get the Appellant illegally declared incompetent and unrecoverable, which the Appellant is 100% competent, in violation of Appellant's rights as given in the 5", 6"', 8" and 14"Amendments of the United States Constitution.

[2.] Appellant's rights to Failure to Intervene, Search/Seizure, Due Process, Self-Represented, Fair and Impartial Judges/Trials/Hearings, Complete defense,Too Excess Bail/Bond and Cruel/Unusual Punishment and Equal Protection were violated when Appellant was denied all of his rights by the Trial Court, including the right to adequate counsel, and his right to Fair and Impartial Judge when his Motion for Recusal on all Judges/Prosecutors/Appellant's advisor was declined.

[3.] The Trial Courts erred in allowing the State to commit prosecutorial misconduct in his presence in violation of C.R. 33, Ohio R. Prof'l. Cond. 8.3, 8.4, and 3.8 and the 4", 5", 6".8", and 14"' Amendment Rights to Failure to Intervene, Search/Seizure, Fair/Impartial Judges/Trials/Hearings, Self-Represent, complete defense, Due Process, To Excessive Bail/Bond, Cruel and Unusual Punishment and Equal Protection of the Law.

[4.] Appellant was prejudiced by the ineffectiveness of his multiple Trial Counsels when all Counsels failed to object to the elements and fact-finding in the State's Record, in violation of the4", 5", 6", 8th and 14" 'Amendments of the United States Constitution.

[5.] The Trial Courts committed plain error when they found the Appellant guilty of Violation of Protection Order, a misdemeanor of the first degree, where in-light of new evidence was presented could not support a conviction and a mistrial was motioned for by the Appellant several times.

[6.] The state erred in withholding multiple Brady's/Giglio's Rule violations by multiple different state attorneys and their

witnesses in direct violation of the 4", 5", 6", 8", and 14"
Amendments of the United States Constitution.

[7.] The State and Trial Courts civil/criminal conspired against
the Appellant to cover up multiple criminal charges and bar
violations by multiple judges and prosecutors, including Judge
Hummer and His wife Jeanine Hummer, while claiming the
Appellant is mentally ill in direct violation of the 4",5",6",8",
and 14" Amendments of the United States Constitution.

(Sic passim.)

## III. LEGAL ANALYSIS

### A. First Assignment of Error

{¶ 19} By his first assignment of error, Mr. Rohrig argues he was denied effective
assistance of counsel when his attorney, Mr. Shafer, disclosed privileged information to Dr.
John Tilley, the psychologist who conducted the September 2022 evaluation of Mr. Rohrig.

{¶ 20} Before we can address the merits of this assignment of error, we must
determine whether Mr. Shafer was Mr. Rohrig's attorney or Mr. Rohrig was representing
himself. Both the Sixth Amendment to the United States Constitution and Article I, Section
10 of the Ohio Constitution guarantee criminal defendants the right to counsel. Conversely,
the federal and state constitutions also grant criminal defendants the right to self-
representation. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 23-24. Once a
defendant waives the right to counsel, a trial court may appoint standby counsel to aid the
pro se defendant " 'if and when the accused requests help, and to be available to represent
the accused in the event that termination of the defendant's self-representation is
necessary.' " *Id.* at ¶ 28, quoting *Faretta v. California*, 422 U.S. 806, 834 (1975), fn. 46.
Appointment of standby counsel is not a constitutional right, but a matter left to the trial
court's discretion. *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, ¶ 13, 19.

{¶ 21} The right to representation by counsel and the right to proceed pro se are
independent of each other and may not be asserted simultaneously. *Martin* at ¶ 32.
Therefore, "a defendant cannot at the same time exercise *both* the Sixth Amendment right
to counsel *and* the right to proceed pro se." (Emphasis sic.) *Hackett* at ¶ 14. Defendants
who choose to represent themselves explicitly waive their constitutional right to have the
assistance of counsel. *Id.* at ¶ 12. Consequently, "[w]hen a defendant elects to represent
himself, he is forgoing any Sixth Amendment argument based on the idea that counsel—

standby or otherwise—provided insufficient aid." *Id.* at ¶ 16. In other words, a defendant who proceeds pro se during the trial court proceedings cannot raise a claim of ineffective assistance of counsel on appeal. *See, e.g.*, *State v. Dinger*, 5th Dist. No. 2020CA00177, 2022-Ohio-608, ¶ 16, citing *State v. Hillman*, 10th Dist. No. 14AP-252, 2014-Ohio-5760, ¶ 58; *State v. Adams*, 7th Dist. No. 14 MA 0077, 2016-Ohio-891, ¶ 28.

**{¶ 22}** In this case, the record contains conflicting information regarding the existence and extent of the attorney-client relationship between Mr. Rohrig and Mr. Shafer. Throughout both 2021 CRB 3653 and 2022 CRB 10694, Mr. Rohrig repeatedly insisted he was representing himself. This insistence led to two appointed attorneys withdrawing from 2021 CRB 3653. Mr. Shafer was first appointed as Mr. Rohrig's attorney on May 9, 2022 in 2021 CRB 3653. In a pro se motion filed in 2022 CRB 10694 on September 13, 2022, Mr. Rohrig wrote, "Mr. Shafer is not the Defendant's Attorney, but Advisor only with great extreme protest by the Defendant as he has had access to Westlaw and Lexis Nexis and no need of an attorney." (Sept. 13, 2022 Notice of Appeal and Stay of Mental Health Order at 4.) Approximately two weeks after Mr. Rohrig made this statement, Mr. Shafer filed a notice of appearance of counsel in 2022 CRB 10694. On October 31, 2022, Mr. Rohrig filed a "motion to recuse" Mr. Shafer in 2022 CRB 10694. In that motion, Mr. Rohrig again stated that Mr. Shafer was not his attorney but an advisor only. Finally, at the November 15, 2022 hearing, the trial court inquired into the situation:

> THE COURT: Okay. And I understand Mr. Rohrig is pro se. Mr. Shafer, you're here on an advice-only capacity?
>
> MR. SHAFER: That's correct. Ryan Shafer, * * * Your Honor, advice only.

(Nov. 15, 2022 Tr. at 3.)

**{¶ 23}** This record leads this court to conclude that at some point after the appointment of Mr. Shafer as Mr. Rohrig's attorney, the trial court permitted Mr. Rohrig to proceed pro se and appointed Mr. Shafer as "advice only" (or standby) counsel. However, we lack the transcripts of all the hearings that occurred before the trial court, so we do not know when Mr. Shafer's transition from attorney to standby counsel occurred. Whether we review Mr. Rohrig's ineffective assistance argument turns on whether Mr. Shafer was Mr. Rohrig's attorney when Mr. Shafer provided the alleged ineffective assistance. If the

alleged ineffective assistance happened after Mr. Rohrig chose to proceed pro se, then he cannot assert a claim on appeal for ineffective assistance. *See Hackett* at ¶ 16; *Dinger* at ¶ 16; *Adams* at ¶ 28.

**{¶ 24}** Mr. Rohrig argues Mr. Shafer was ineffective because he disclosed information protected by the attorney-client privilege to Dr. Tilley to assist in Dr. Tilley's evaluation of Mr. Rohrig. Dr. Tilley submitted a report to the court regarding Mr. Rohrig's competency to stand trial dated September 5, 2022. Thus, Dr. Tilley evaluated Mr. Rohrig *before* the record contained any indication that Mr. Shafer acted in an "advice only" capacity. We, therefore, will review Mr. Rohrig's ineffective assistance argument under the presumption that Mr. Shafer's transition to standby counsel occurred after the alleged ineffective assistance occurred.

**{¶ 25}** In order to prevail on an ineffective assistance claim, a defendant must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show counsel's performance was deficient. *Strickland* at 687; *State v. Bradley*, 42 Ohio St.3d 136, 141 (1989). To meet that requirement, the defendant must demonstrate counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland* at 687. Counsel's conduct is deficient if it falls below an objective standard of reasonable representation. *Id.* at 688; *Bradley* at 142.

**{¶ 26}** If the defendant shows counsel's performance was deficient, then the second prong of the *Strickland* test requires the defendant to prove he was prejudiced by the deficient performance. *Strickland* at 687; *Bradley* at 141-42. To demonstrate prejudice, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694; *accord Bradley* at 142.

**{¶ 27}** Here, Mr. Rohrig claims Mr. Shafer provided deficient representation because he breached the attorney-client privilege. The attorney-client privilege is governed by statute, R.C. 2317.02(A), and for situations that are not addressed in the statute, by common law. *State v. Brunson*, ___ Ohio St.3d ___, 2022-Ohio-4299, ¶ 28. R.C. 2317.02(A) provides a testimonial privilege; it prevents an attorney from testifying about the attorney's

advice to a client or communications made to the attorney by a client. *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, ¶ 7, fn. 1. Under the common-law attorney-client privilege, " '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.' " *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, ¶ 21, quoting *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir.1998). The common-law privilege " 'protects against any dissemination of information obtained in the confidential relationship.' " *Id.* at ¶ 26, quoting *Am. Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 348 (1991). However, facts within the attorney's own knowledge are not protected by the attorney-client privilege. *State ex rel. Beacon Journal Publishing Co. v. Bodiker*, 134 Ohio App.3d 415, 424 (10th Dist.1999).

**{¶ 28}** Dr. Tilley's report includes a section summarizing his consultation with Mr. Shafer. According to that summary, Mr. Shafer offered his opinion regarding Mr. Rohrig's demeanor and behavior. Mr. Shafer, however, did not share with Dr. Tilley any information Mr. Rohrig had communicated to him or any advice he had given to Mr. Rohrig. Consequently, regardless of whether the statutory or common-law privilege applies, Mr. Shafer did not violate the attorney-client privilege. *See Beacon Journal Publishing Co.* at 424.

**{¶ 29}** Because Mr. Rohrig has not shown that Mr. Shafer disclosed privileged communications, he cannot establish ineffective assistance of counsel. Accordingly, we overrule Mr. Rohrig's first assignment of error.

**B. Second Assignment of Error**

**{¶ 30}** By his second assignment of error, Mr. Rohrig argues the trial court erred by denying his motions to recuse the trial judge, the prosecutors, and his counsel. Although Mr. Rohrig has articulated a broad assignment of error, his argument is more limited. As best we can determine, Mr. Rohrig only sets forth reasons for the disqualification of the prosecutors in his appellate brief.

**{¶ 31}** Pro se litigants, such as Mr. Rohrig, must follow the same procedural rules as litigants represented by counsel. *State v. Dodson*, 10th Dist. No. 22AP-342, 2023-Ohio-

1341, ¶ 3; *State v. Cockroft*, 10th Dist. No. 13AP-532, 2014-Ohio-1644, ¶ 9. Under those rules, an appellant's brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). The appellant, not the appellate court, bears the burden of constructing the legal arguments necessary to support the appellant's assignments of error. *State v. Marcum*, 10th Dist. No. 18AP-249, 2019-Ohio-1019, ¶ 16; *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34. If an appellate court cannot discern a party's arguments, then it cannot grant relief. *Columbus v. Wynn*, 10th Dist. No. 20AP-479, 2021-Ohio-3934, ¶ 7. Thus, an appellate court may disregard any assignment of error that is not argued separately in the brief as required under App.R. 16(A). App.R. 12(A)(2); *Hubbard* at ¶ 34. Here, we will not address the denial of Mr. Rohrig's motions to recuse the trial judge or defense counsel because he did not argue those parts of his assignment of error in his brief. *See State v. Jordan*, 10th Dist. No. 11AP-691, 2012-Ohio-1760, ¶ 17 (declining to address an appellant's manifest-weight argument because the appellant failed to present "reasons in support of the contentions" as required by App.R. 16(A)(7)).

**{¶ 32}** Mr. Rohrig first argues the trial court should have disqualified the prosecutor for arguing Mr. Rohrig was fixated on Mrs. Hummer. Because Mr. Rohrig did not raise this as a basis for disqualification before the trial court, he has forfeited all but a plain-error review of his argument. *See State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23 (holding a failure to preserve an objection forfeits all claims other than a claim of plain error under Crim.R. 52(B)). "Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice." *State v Bailey*, ___ Ohio St.3d ___, 2022-Ohio-4407, ¶ 8. To demonstrate plain error, an appellant must establish (1) there was error, (2) the error was obvious, and (3) the error affected the appellant's substantial rights. *State v. Drain*, 170 Ohio St.3d 107, 2022-Ohio-3697, ¶ 52.

**{¶ 33}** Before disqualifying a prosecutor, a court must determine that the defendant has suffered actual prejudice. *Desmond v. State*, 7th Dist. No. 2018 MA 00138, 2020-Ohio-181, ¶ 42; *State v. Cornick*, 8th Dist. No. 99609, 2014-Ohio-2049, ¶ 24; *State v. Bryant*, 4th Dist. No. 96CA14, 1997 Ohio App. LEXIS 2952, *4 (June 26, 1997). The mere

appearance of impropriety is not a sufficient basis on which to disqualify a prosecutor. *Desmond* at ¶ 42; *Cornick* at ¶ 24; *Bryant* at *4. A court will not presume prejudice has occurred when the defendant has not demonstrated any. *Desmond* at ¶ 42.

{¶ 34} In this case, the prosecutor for the City of Hilliard argued to the trial court that it should file an affidavit in the probate court for the civil commitment of Mr. Rohrig pursuant to R.C. 5122.111. In support of this argument, the prosecutor contended that Mr. Rohrig demonstrated a pattern of fixating on people, including Mrs. Hummer. Mr. Rohrig asserts he did not fixate on Mrs. Hummer.

{¶ 35} Mr. Rohrig filed multiple motions to recuse Judge Hummer based on the incident involving Mrs. Hummer that we recounted above. Mr. Rohrig attached to his motions photographs taken from social media of Mrs. Hummer and her family members. Even after Judge Hummer recused himself, Mr. Rohrig inexplicably continued to mention Mrs. Hummer in his motions. For example, in an August 9, 2022 motion to recuse Judge O'Grady filed in 2022 CRB 10694, Mr. Rohrig stated, "Jeanine Hummer (Judge Hummer's wife) proves there's no mental health problems with the defendant." (Aug. 9, 2022 Mot. to Disqualify Judge O'Grady and Mot. to Dismiss at 1-2.) In an August 15, 2022 motion to recuse Judge O'Grady and the prosecutor filed in 2021 CRB 3653, Mr. Rohrig wrote, "Both Judge O'Grady and [the prosecutor] have allowed a new charge with [prosecutor] Keck as a victim and witness against the defendant when the 3 illegal warrants used for a mental health assessment were illegal as per Judge Hummer's wife Jeanine Hummer * * * since a subpoena trumps a CPO." (Aug. 15, 2022 Mot. to Recuse Judge O'Grady and Special Prosecutor Jwayyed at 2.)

{¶ 36} Given Mr. Rohrig's trial court filings, we conclude that evidence supports the prosecutor's contention that Mr. Rohrig was fixated on Mrs. Hummer. Consequently, the prosecutor made an evidence-backed argument; she did not inflict actual prejudice that justifies disqualification. *See Desmond* at ¶ 42; *Cornick* at ¶ 24; *Bryant* at *4. The trial court, therefore, did not commit error, much less plain error, in not disqualifying the prosecutor.

{¶ 37} Second, Mr. Rohrig argues under his second assignment of error that the trial court erred in not disqualifying prosecutor Keck and all of the City of Hilliard prosecutors because Ms. Keck was a member of the Board of Education for Hilliard City Schools and

also an employee of the City of Columbus. Mr. Rohrig did not raise this argument in a motion to disqualify Ms. Keck or the City of Hilliard prosecutors below, so, again, we apply the plain-error standard.

{¶ 38} Mr. Rohrig fails to identify any actual prejudice to him resulting from Ms. Keck's simultaneous service on the Hilliard City Board of Education and employment with the City of Columbus. Moreover, we do not see how any actual prejudice could occur. Accordingly, we conclude that no plain error arose from not disqualifying Ms. Keck or the City of Hilliard prosecutors.

{¶ 39} Having rejected both of Mr. Rohrig's arguments, we conclude the trial court did not err by not disqualifying the prosecutors. We thus overrule Mr. Rohrig's second assignment of error.

## C. Third Assignment of Error

{¶ 40} By Mr. Rohrig's third assignment of error, he argues the prosecutor for the City of Hilliard committed prosecutorial misconduct by speaking on behalf of the prosecutor for the City of Westerville during the November 15, 2022 hearing. We disagree.

{¶ 41} As we explained above, during the November 15, 2022 hearing, the prosecutor for the City of Hilliard related the procedural history of 2019 CRB 16888 because the prosecutor for the City of Westerville was not present. In essence, the prosecutor for the City of Hilliard told the court that Mr. Rohrig had appealed the judgment of conviction and sentence in 2019 CRB 16888, and this court had affirmed that judgment. The prosecutor then said Mr. Rohrig "would just need to be notified that that probation and that sentence [in 2019 CRB 16888] still exists and he is still on that probation." (Nov. 15, 2022 Tr. at 19.)

{¶ 42} In cases of alleged prosecutorial misconduct, the touchstone of the due process analysis is fairness, not the culpability of the prosecutor. *Smith v. Phillips*, 455 U.S. 209, 219 (1982); *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 162. Therefore, the test a court applies when evaluating allegations of prosecutorial misconduct is whether the prosecutor's conduct was improper and, if so, whether it prejudicially affected the defendant's substantial rights. *Thompson* at ¶ 162.

{¶ 43} Here, the prosecutor for the City of Hilliard made no substantive argument on behalf of the City of Westerville, but merely provided the trial court with procedural

information.   Mr. Rohrig does not contest the correctness of the publicly available procedural information provided.  Therefore, we conclude the prosecutor's remarks were neither improper nor prejudicial.  Accordingly, we overrule Mr. Rohrig's third assignment of error.

### D.  Fourth Assignment of Error

{¶ 44}  By Mr. Rohrig's fourth assignment of error, he argues he was denied effective assistance of counsel when his attorneys failed to object to factfinding.  Mr. Rohrig does not specify what factfinding he believes his attorneys should have objected to.  However, Mr. Rohrig cannot raise any ineffective assistance argument regarding the failure to object to the factfinding that resulted in his conviction in 2019 CRB 16888.

{¶ 45}  The doctrine of res judicata bars a party from raising a claim that he could have raised and litigated in a prior proceeding.  *State v. Blanton*, ___ Ohio St.3d ___, 2022-Ohio-3985, ¶ 2.  Any "issues that could have been raised on direct appeal and were not are res judicata and not subject to review in subsequent proceedings." *State v. Davis*, 119 Ohio St.3d 422, 2008-Ohio-4608, ¶ 6; *accord State v. Cunningham*, 10th Dist. No. 23AP-12, 2023-Ohio-1986, ¶ 9; *State v. Bridgewater*, 10th Dist. No. 22AP-417, 2023-Ohio-1211, ¶ 11. Because Mr. Rohrig could have raised his failure-to-object argument in the direct appeal of his judgment of conviction in 2019 CRB 16888, he cannot raise it in this appeal.

{¶ 46}  That leaves us with the factfinding that resulted in the judgments on appeal: the November 15, 2022 judgments dismissing the charges against Mr. Rohrig and discharging him after finding he was incompetent to stand trial.  But at the time of those judgments, Mr. Rohrig was representing himself.   At the beginning of the November 15, 2022 hearing, the trial court confirmed Mr. Rohrig was pro se with Mr. Shafer assisting him as standby counsel.   As we stated above, a pro se defendant cannot raise a claim of ineffective assistance of counsel on appeal.  *Hackett*, 2020-Ohio-6699 at ¶ 16; *Dinger*, 2022-Ohio-608 at ¶ 16; *Adams*, 2016-Ohio-891 at ¶ 28.  Consequently, Mr. Rohrig cannot argue Mr. Shafer rendered ineffective assistance by not objecting to the trial court's factfinding during the November 15, 2022 hearing.[1]  We, therefore, overrule Mr. Rohrig's fourth assignment of error.

---

[1] We also note that Mr. Shafer had no need to object. The record of the November 15, 2022 hearing shows Mr. Rohrig himself objected to the trial court's factfinding during that hearing.

### E. Fifth Assignment of Error

{¶ 47} By Mr. Rohrig's fifth assignment of error, he argues the trial court erred in confirming his conviction in 2019 CRB 16888 when he has evidence that undermines the conviction. Initially, in this assignment of error, Mr. Rohrig questions how the trial court could find him incompetent in 2021 CRB 3653 and 2022 CRB 10694, yet continue to enforce his conviction and sentence in 2019 CRB 16888. Quite simply, Mr. Rohrig was already convicted and sentenced in 2019 CRB 16888 before the trial court found him incompetent to stand trial.

{¶ 48} A defendant is rebuttably presumed to be competent to stand trial. *State v. Barton*, 108 Ohio St.3d 402, 2006-Ohio-1324, ¶ 56, citing R.C. 2945.37(G). The presumption of competency " 'remains valid under R.C. 2945.37(G) unless "after a hearing, the court finds by a preponderance of the evidence" that the defendant is not competent.' " *Id.*, quoting *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 74. The court evaluates a defendant's "*present* mental condition" in deciding whether he is competent or not. (Emphasis added.) R.C. 2945.37(G). That is, the court focuses on determining whether the defendant is capable of understanding the nature and objective of the proceedings and assisting in his defense "at the time of trial." *State v. Hough*, 169 Ohio St.3d 769, 2022-Ohio-4436, ¶ 40.

{¶ 49} When Mr. Rohrig's trial occurred in 2019 CRB 16888, the trial court properly presumed Mr. Rohrig was competent to stand trial. The point of the *subsequent* competency proceedings was to determine Mr. Rohrig's competency to stand trial in 2021 CRB 3653 and 2022 CRB 10694. The competency proceedings had no relevancy to 2019 CRB 16888 because the trial in 2019 CRB 16888 was already complete before the proceedings in the latter two cases began. As Mr. Rohrig was competent when the trial court entered the final judgment in 2019 CRB 16888, the trial court did not err in continuing to enforce that judgment against him. *See* R.C. 2945.37(G).

{¶ 50} Second, Mr. Rohrig argues under this assignment of error that he has new evidence that requires this court to vacate 2019 CRB 16888. As a general matter, a defendant can receive postconviction relief based on newly discovered evidence. Pursuant to Crim.R. 33(A)(6), a defendant may move for a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have

discovered and produced at the trial." Although Mr. Rohrig has filed multiple motions for a new trial in 2019 CRB 16888, he has not presented the trial court with a Crim.R. 33(A)(6) motion for a new trial based on his new evidence. Additionally, he has not explained why he could not have with reasonable diligence discovered and produced the purported new evidence at the time of his trial. Consequently, we cannot review Mr. Rohrig's new evidence or his argument.

{¶ 51} In sum, both of Mr. Rohrig's arguments under his fifth assignment of error are unavailing. Accordingly, we overrule Mr. Rohrig's fifth assignment of error.

### F. Sixth Assignment of Error

{¶ 52} By Mr. Rohrig's sixth assignment of error, he argues prosecutor Keck violated her obligation to produce evidentiary materials favorable to him as required under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

{¶ 53} Under *Brady*, a prosecutor must disclose to the defendant "evidence favorable to an accused" that is "material either to guilt or to punishment." *Brady* at 87. *Giglio* clarified that the evidence provided includes evidence a defendant might use to impeach a government witness, as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985).

{¶ 54} In this case, Mr. Rohrig contends he did not receive all the evidence he was entitled to under *Brady* and *Giglio* in 2021 CRB 3653. Because the trial court found him incompetent to stand trial in that case and, thus, dismissed the complaint against him and discharged him, Mr. Rohrig's claims of *Brady* and *Giglio* violations are moot.

{¶ 55} Moot issues involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations. *Grandview Heights v. B.S.H.*, 10th Dist. No. 22AP-207, 2023-Ohio-940, ¶ 12. An issue is moot when it has no practical significance and, instead, presents a hypothetical or academic question. *State ex rel. Ford v. Ruehlman*, 149 Ohio St.3d 34, 2016-Ohio-3529, ¶ 55. As a general matter, courts do not decide moot issues. *B.S.H.* at ¶ 12; *Tassone v. Tassone*, 10th Dist. No. 20AP-426, 2021-Ohio-4063, ¶ 19.

{¶ 56} Here, Mr. Rohrig's case in 2021 CRB 3653 reached final resolution without a trial on the merits. Consequently, Mr. Rohrig's contention that the prosecutor did not disclose all impeachment and exculpatory evidence under *Brady* and *Giglio* is moot. We,

therefore, will not address that argument, and we dismiss Mr. Rohrig's sixth assignment of error.

### G. Seventh Assignment of Error

{¶ 57} By Mr. Rohrig's seventh assignment of error, he argues the trial court and the prosecutors conspired against him. We disagree.

{¶ 58} Although Mr. Rohrig claims both civil and criminal conspiracy occurred, he supports his argument with citation to law regarding civil conspiracy only. We, therefore, will limit our review to civil conspiracy. Civil conspiracy is " 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.' " *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995), quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126 (1987). The malice required for a civil conspiracy is a " 'state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.' " *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998), quoting *Pickle v. Swinehart*, 170 Ohio St. 441, 443 (1960).

{¶ 59} Mr. Rohrig's evidence of a conspiracy against him is the argument the prosecutor for the City of Hilliard made to the trial court urging it to file an affidavit in the probate court for Mr. Rohrig's civil commitment pursuant to R.C. 5122.111. The prosecutor contended that Mr. Rohrig demonstrated a pattern of fixating on people, including Mrs. Hummer and Judge O'Grady. Additionally, the prosecutor explained that Mr. Rohrig had claimed in emails that he had the right to start making citizen's arrests if his demands were not met by a certain date. The prosecutor then stated, "So he has this delusional belief that he has the right to start doing citizen's arrests on people, and if he starts engaging in that, that poses a great risk to anybody he's trying to perform a citizen arrest on, which citizen arrest is not legal." (Nov. 15, 2022 Tr. at 14-15.)

{¶ 60} The prosecutor's argument before the trial court was just that: argument. It is not evidence of a conspiracy. Nonetheless, even if we construed the prosecutor's argument as an invitation to engage in a conspiracy, the trial court rejected it when the trial court denied the prosecutor's request to file an affidavit for the civil commitment of Mr. Rohrig. Accordingly, we overrule Mr. Rohrig's seventh assignment of error.

## IV. CONCLUSION

{¶ 61} For the foregoing reasons, we overrule Mr. Rohrig's first through fifth and seventh assignments of error, and we dismiss as moot Mr. Rohrig's sixth assignment of error.  We therefore affirm the judgments of the Franklin County Municipal Court.

*Judgments affirmed.*

LUPER SCHUSTER, EDELSTEIN, and LELAND, JJ., concur.

———————————